TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00401-CV







Texas Property and Casualty Guaranty Association, for Paula Insurance

Company, an Impaired Insurer, Appellant


v.


National American Insurance Company and Clayton Mark Beck, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. GN301673, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING







O P I N I O N



 This is an appeal from a suit for judicial review of a workers' compensation decision
concerning which of two companies--Jerry Gregory, Inc., or Hunter Trucking--was the employer
of two workers at the time the workers were injured in a trucking accident. The outcome of this
dispute, in turn, controls whether National American Insurance Company (NAIC), Gregory's
workers' compensation insurance carrier, or Texas Property Casualty Insurance Guarantee
Association (TPCIGA), the successor to Hunter's carrier, must pay medical and income benefits. 
After the Workers' Compensation Commission (the Commission) made a final determination that
Gregory was the employer and NAIC was therefore liable to pay benefits, NAIC brought a suit for
judicial review. However, after a jury trial under the "modified de novo" standard applicable to
disputes relating to compensability, eligibility, or amount of income benefits, see Tex. Lab. Code
Ann. § 410.301 (West Supp. 2005), the district court rendered judgment on a verdict that Hunter was
the employer, making TPCIGA the liable carrier. 

 TPCIGA appeals, contending principally that this dispute concerns "coverage," not
compensability, and that "coverage" disputes must be decided under the substantial-evidence review
regime of the Administrative Procedures Act. See id. § 410.255 (West 1996). TPCIGA contends
that, by reviewing the administrative decision under the modified de novo standard, the district court
exceeded its "subject-matter jurisdiction" to disturb the Commission's order. See Morales v. Liberty
Mut. Ins. Co., 169 S.W.3d 485, 488 (Tex. App.--El Paso 2005, pet. filed).

 We will affirm the judgment of the district court.


BACKGROUND


 The underlying dispute centers on the business relationship between Hunter and
Gregory. Gregory was a common carrier licensed by the U.S. Department of Transportation; Hunter
owned tractor and trailer equipment. In July 2000, the companies executed an agreement whereby
Gregory leased the "equipment and services" of Hunter. The agreement provided that:



 Gregory "shall have exclusive possession, control, and use of the equipment,
and shall assume complete responsibility for the operation of the equipment for
the duration of the lease."

 Hunter "is responsible for providing all fuel, meals and lodging, repairs and
maintenance to tractor and trailer, tolls, ferries, detention, etc., necessary in the
operation of equipment while in the service of [Gregory]."
 "[T]he services of [Hunter] under the terms of the lease agreement is that of
independent contractor and that no 'employee-employer' relationship exists
between [Hunter] and [Gregory]. [Hunter] is therefore responsible for providing
his own workman's compensation insurance, employment and income taxes, etc. 
Further, any drivers or employees of [Hunter] are the complete responsibility of
[Hunter]."

 Gregory "agrees to compensate [Hunter] in the amount of 75% of gross revenues
for each trip ticket. [Gregory] will provide all permitting necessary and will pay
all fuel taxes."




 In October 2000, Benjamin Brown and Clayton Mark Beck were injured in a single-vehicle accident while they were driving a truck owned by Hunter, pulling a trailer owned by
Gregory, on a trip assigned to them by Gregory. Beck was left a paraplegic. Both Beck and Brown
filed workers' compensation claims.

 Hunter's workers' compensation carrier, Paula Insurance, and Gregory's carrier,
NAIC, both denied liability for benefits, each maintaining that Brown and Beck were employees of
the other's insured at the time of the accident. NAIC and Paula submitted the dispute to the
Commission, and a benefits contested case hearing was held. See Tex. Lab. Code Ann. §§ 410.151-.169 (West 1996 & Supp. 2005). The hearing examiner concluded that Gregory was the workers'
employer at the time of the accident and that NAIC was thus liable for benefits. NAIC appealed to
the Commission's appeals panel, id. §§ 410.201-.208 (West Supp. 2005), which rendered a final
decision affirming the hearing examiner's decision. See id. §§ 410.203-.204.

 NAIC filed a petition for judicial review and a jury demand in McLennan County
district court. As required by the workers' compensation act, Paula and the two injured workers,
Beck and Brown, were named as defendants and served. See id. § 410.253. Paula filed a general
denial and its own jury demand. While the case was pending, Paula was declared insolvent and
placed in receivership, and the Texas Department of Insurance designated Paula as an impaired
insurer. See Tex. Ins. Code Ann. art. 21.28-C, §§ 5(9), 8(b) (West Supp. 2005). TPCIGA, which
is statutorily obligated to discharge the policy obligations of impaired insurers, intervened and was
substituted for Paula. See id. TPCIGA filed an agreed motion to transfer venue to Travis County,
which was granted. See id. § 10(g) (venue in suit by or against TPCIGA in Travis County). The
Commission subsequently intervened. See Tex. Lab. Code Ann. § 410.254 (West Supp. 2005)
(Commission may intervene in suit for judicial review of final decision of Commission's appeals
panel). 

 NAIC and TPCIGA filed cross-motions for summary judgment, and the district court
denied both, finding that fact questions remained regarding whether Brown and Beck were
employees of Hunter or Gregory. Beck, who had previously answered with a general denial of
NAIC's claims that he and Brown were Hunter employees, announced at trial that he instead agreed
with plaintiff NAIC's position. (1) Beck proceeded to participate in the trial as a plaintiff, advocating,
alongside NAIC, the position that he was a Hunter employee.

 At the conclusion of the trial, the district court submitted a single issue to the jury:
whether Hunter was the employer of Beck and Brown at the time of their injuries. The jury found
in the affirmative. Following the verdict, but before judgment, Beck filed a motion to be realigned
as a plaintiff, urging that he had "sat at Plaintiff's table, and vigorously advocated Plaintiff's
position." Over TPCIGA's objection, the district court granted the motion. The court subsequently
rendered judgment on the verdict that Beck and Brown were Hunter employees at the time of their
accident and that TPCIGA was liable for benefits. TPCIGA appealed. 


DISCUSSION


 TPCIGA brings five issues on appeal. In its first issue, TPCIGA contends that the
district court lacked subject-matter jurisdiction to adjudicate NAIC's suit for judicial review. In its
second issue, TPCIGA complains that the district court erred in permitting Beck to participate at trial
as a de facto plaintiff. In its third issue, TPCIGA challenges the legal and factual sufficiency of the
jury's finding that Hunter was the claimants' employer at the time of the accident. TPCIGA's
remaining two issues concern the district court's exclusion of two trial exhibits, a copy of the
commission's appeals panel decision and a letter from Gregory's owner to Beck complaining of log
book violations.


Subject-matter jurisdiction

 In its first issue, TPCIGA presents a jurisdictional argument rooted in the distinctions
between the Act's "two mutually exclusive categories" of appealable commission decisions and their
corresponding "separate, distinct, and quite different judicial review paths." 1 John T. Montford,
et al., A Guide to Texas Workers' Comp Reform § 6.64 cmt a (1991) [hereinafter "Guide"]. 
TPCIGA's contentions can be summarized: the parties and district court have ventured down the
wrong judicial review path, and this error deprived the district court of subject-matter jurisdiction.


 The Act's two judicial review paths

 Under earlier workers' compensation law, courts reviewed final administrative
determinations under a single de novo review standard, with a right to jury trial. See Rodriguez v.
Service Lloyd Ins. Co., 997 S.W.2d 248, 252 (Tex. 1999). In its 1989 revisions to the workers'
compensation system, the legislature replaced that standard for judicial review with two different
standards, "modified de novo" and substantial evidence. See id. at 252-53.

 Under the "modified de novo" standard, the parties try, before the trial court or a jury,
only those issues finally decided by the commission appeals panel, and the party appealing has the
burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. §§ 410.304 (West Supp.
2005). The trier of fact must consider, but is not bound by, the appeals panel's decision. Id. Venue
in a suit for judicial review under the modified de novo standard is generally in the county where the
injured employee resided at the time of injury. Id. § 410.252(b).

 In disputes other than those governed by the modified de novo standard, the appeals
panel's decision is appealable, if at all, under the more deferential substantial-evidence rule and "in
the manner provided for judicial review of a contested case" under subchapter G of the
Administrative Procedures Act. Id. § 410.255 (West 1996); see Tex. Gov't Code Ann. § 2001.171-.178 (West Supp. 2005). Under subchapter G, the trial court sits without a jury and is generally
confined to the agency record. Tex. Gov't Code Ann. § 2001.175(e). These provisions have been
viewed as also requiring that any suits for judicial review governed by the substantial-evidence
standard be filed exclusively in Travis County District Court, like other suits governed by APA
subchapter G. Rodriguez, 997 S.W.2d at 253; Montford, Guide § 6.64 cmt b; see Tex. Gov't Code
Ann. § 2001.176(b) ("Unless otherwise provided by statute . . . the petition must be filed in a Travis
County district court.").

 The choice of judicial review paths is determined by the nature of issues in dispute. 
If a party seeks review of a final appeals panel decision "regarding compensability or eligibility for
or amount of income or death benefits," the modified de novo procedures apply. Tex. Lab. Code
Ann. § 410.301; Rodriguez, 997 S.W.2d at 253. Review of other appealable issues is governed by
the substantial-evidence rule. Tex. Lab. Code Ann. § 410.255(a); Rodriguez, 997 S.W.2d at 253. 


 The parties' contentions

 At every procedural juncture prior to this appeal, the parties and lower courts
concurred in following the modified de novo review path. NAIC filed a petition in McLennan
County district court; at the time of the injury, Beck was a resident of that county. See Tex. Lab.
Code Ann. § 410.252(b). NAIC also filed a jury demand. TPCIGA's predecessor, Paula Insurance,
filed a general denial and its own jury demand. These pleadings were subsequently adopted by
TPCIGA. The suit was later transferred to Travis County district court under an agreed order
unrelated to the determination of review path. The parties, without objection, tried the case to a jury
under the modified de novo review standard. 

 On appeal, TPCIGA contends, for the first time, that NAIC's suit should have instead
followed the substantial-evidence review path because the suit presented issues of "coverage," which
TPCIGA distinguishes from compensability, eligibility or amount of income benefits. While
acknowledging the inconsistency between its current position and its actions below, TPCIGA insists
that it may raise its coverage-versus-compensability argument on appeal because it implicates the
district court's subject-matter jurisdiction to render its judgment. See Texas Ass'n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993) (subject-matter jurisdiction can neither be
waived nor established by consent). TPCIGA urges that the lower courts exceeded their subject-matter jurisdiction in at least two ways. First, observing that NAIC initially filed its judicial review
suit in McLennan County, TPCIGA argues that the Travis County district court had exclusive
subject-matter jurisdiction to entertain NAIC's suit, see Tex. Lab. Code Ann. § 410.255; Tex. Gov't
Code Ann. § 2001.176(b), suggesting that the McLennan County district court had no jurisdiction
but to dismiss the case. See, e.g., Leonard v. Cornyn, 47 S.W.3d 524, 527 (Tex. App.--Austin 1999,
pet. denied) ("It is evident that the trial court was powerless to rule on the motion to transfer venue
if the court lacked subject-matter jurisdiction."). (2) Second, TPCIGA contends more generally that
the Travis County district court's application of the modified de novo standard when it should have
applied substantial-evidence review exceeded the court's subject-matter jurisdiction. While
acknowledging that standards of review are ordinarily not jurisdictional, even though they define the
balance of power between and among tribunals, TPCIGA emphasizes the separation-of-powers
implications of judicial review of executive agency orders, suggesting that reviewing courts exceed
their subject-matter jurisdiction by failing to give agency actions the required degree of deference.
See Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76 (Tex. 2000); Sierra Club v. Texas Natural Res.
Conservation Comm'n, 26 S.W.3d 684, 688 (Tex. App.--Austin 2000), aff'd, 70 S.W.3d 809 (Tex.
2002). (3)

 To support its arguments that NAIC's suit was governed by the substantial-evidence
review process of section 410.255 and that the district court lacked subject-matter jurisdiction,
TPCIGA relies chiefly upon the El Paso Court of Appeals's recent decision in Morales v. Liberty
Mutual Ins. Co., 169 S.W.3d 485 (Tex. App.--El Paso 2005, pet. filed). The underlying dispute in
Morales concerned whether a worker who died from job-related injuries was an employee of either
of two subscriber companies, an employee of a non-subscriber, or an independent contractor at the
time of injury, determinations that controlled whether his surviving wife would be entitled to
benefits. Id. at 486-87. The trial court dismissed for want of jurisdiction the wife's suit for judicial
review, and the court of appeals affirmed. Id. at 487. The court agreed with the appeals panel's view
that "[t]he status of being an employee of an insured for which a carrier is liable is an issue of
'coverage,' not compensability." Id. at 488. On this basis, the court concluded that "[j]urisdiction
is proper in Travis County" under section 410.255 and the APA. Id. (4)

 NAIC disputes TPCIGA's views concerning both the appropriate judicial review path
and whether taking the wrong path would have deprived the district court of subject-matter
jurisdiction. NAIC urges that where, as here, it is undisputed that an injured worker is an employee
of some employer who indisputably has coverage, the determination of which employer is an aspect
of the compensability inquiry, and thus governed by modified de novo review. Alternatively, NAIC
contends that the Travis County District Court had subject-matter jurisdiction over its suit and that
TPCIGA's complaint implicated, at most, the appropriate standard of review. As for the fact that
it initially filed its suit in McLennan County district court rather than Travis County, NAIC broadly
construes our decision in Hartford Underwriters Ins. Co. v. Hafley, 96 S.W.3d 449 (Tex.
App.--Austin 2002, no pet.) (construing venue requirement of labor code section 410.252(b), in
light of Dubai Petroleum Co., to be mandatory but not jurisdictional), to extend to judicial review
suits governed by section 410.255 and the APA that are improperly filed outside Travis County.

 We consider first the validity of TPCIGA's assertion that NAIC's suit is one
concerning "coverage" rather than compensability.


 Compensability or "coverage"

 Our disposition of this issue turns on our construction of labor code sections 410.301
and 410.255. Statutory construction presents a question of law that we review de novo. Johnson v.
City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989). We construe statutory provisions in order to
ascertain and effectuate legislative intent. Texas Dep't of Protective & Regulatory Servs. v. Mega
Child Care, Inc., 145 S.W.3d 170, 176 (Tex. 2004). In ascertaining legislative intent, we may
consider the evil sought to be remedied, the legislative history, and the consequences of a particular
construction. See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex.
1998). Further, we read every word, phrase, and expression in a statute as if it were deliberately
chosen and presume the words excluded from the statute are done so purposefully. See Gables
Realty Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.--Austin 2002,
pet. denied). In the Workers' Compensation Act, this is not only a presumption: the legislature
carefully balanced the competing interests of injured employees, employers, and insurance carriers
in an attempt to create a viable compensation system, all within constitutional limitations. See Texas
Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 521 (Tex. 1995).

 Section 410.301 provides that suits "regarding compensability or eligibility for or the
amount of income or death benefits" are governed by modified de novo review. Tex. Lab. Code
Ann. § 401.301. Substantial-evidence review is reserved as the default for any other type of
reviewable appeals panel decision. See id. § 410.255. TPCIGA (1) urges that NAIC's suit concerns
"coverage" and (2) implies that a "coverage" issue is exclusive of a "compensability" issue. 

 The Act does not define "compensability" but does define "compensable injury" as
"an injury that arises out of and in the course and scope of employment for which compensation is
payable under [the Act]." Id. § 401.011(10) (West Supp. 2005). The first component of determining
a compensable injury, whether an injury is one "for which compensation is payable under the act,"
is determined by the Act's provisions governing awards of income benefits, (5) medical benefits, (6) death
benefits, (7) and burial benefits. (8) The second component, the "course and scope of employment" within
which an injury must arise to be compensable, is defined as "an activity . . . that is performed by an
employee while engaged in or about the furtherance of the affairs or business of the employer." Id.
§ 401.011(12).

 "Coverage" in workers' compensation law commonly refers to the threshold issue of
whether an individual or entity who hires workers is an "employer" subject to the Act. See id.
§ 401.011(18) (defining "employer" generally as "a person who makes a contract of hire, employs
one or more employees, and has workers' compensation insurance coverage.") (emphasis added);
In re Texas Mutual Ins. Co., 157 S.W.3d 75, 79-81 (Tex. App.--Austin 2004, orig. proceeding). We
have recognized that a threshold coverage dispute may be within the exclusive jurisdiction of the
workers' compensation commission if it arises in a claim for compensation benefits, but ordinarily
not if presented by a claim predicated upon the absence of coverage. Id. at 80-82 (applying
American Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 803 (Tex. 2001)). We have not yet addressed
how a final agency decision in these types of threshold coverage disputes should be reviewed by the
courts.

 Compensability and coverage issues are ultimately related to some degree: a
"compensable injury" under the Act presupposes that a worker's employer has coverage, and an
injury must be compensable in order to fall within that coverage. (9) The Act does not specifically
address judicial review of coverage issues. Rather, it provides only that appeals panel decisions
"regarding compensability or eligibility for or the amount of income or death benefits" are subject
to modified de novo review, relegating to substantial-evidence review any other types of reviewable
appeals panel that are not "regarding compensability or eligibility for or the amount of income or
death benefits." See Tex. Lab. Code Ann. §§ 410.255 & 410.301(a). For these reasons, our
controlling inquiry is whether NAIC's claim is one "regarding compensability or eligibility for or
the amount of income or death benefits" under section 410.301, not whether that claim can
alternatively or additionally be characterized as one involving "coverage." 

 While not squarely addressing the issue before us, the Texas Supreme Court's
analysis in Garcia is instructive regarding our construction of section 410.301. Rejecting open
courts and jury trial challenges to the then-new Workers' Compensation Act, the supreme court
emphasized that the Act provided a right to jury trial for "the principal compensation issues:
compensability of the injury; eligibility for income and benefits; and, within limits, the amount of
those benefits." 893 S.W.2d at 528. To illustrate "issues regarding compensability," the court cited
"whether [an injury] occurred in the course and scope of employment." Id. at 515. The Garcia court
contrasted these "principal compensation issues" with what it termed the "collateral issues" the Act
made subject to substantial-evidence review. Id. at 529-30. Examples of such collateral issues, the
court posited, "[p]resumably . . . might include such matters as disputes over medical benefits,
attorneys' fees, and administrative sanctions." Id. at 530 n.27.

 Following Garcia, there seems to be little dispute that issues concerning whether an
injury occurred within the scope of employment "regard[] compensability" and are thus subject to
modified de novo review. See ESIS, Inc. v. Johnson, 908 S.W.2d 554, 558-60 (Tex. App.--Fort
Worth 1995, writ denied) (applying, without objection, modified de novo review to dispute
concerning whether jailer's accidental self-inflicted gunshot wound occurred within scope of
employment with county; also citing Garcia for proposition that "[u]nder this modified de novo
review, all issues regarding compensability (such as whether it occurred within the course and scope
of employment) may be tried to a jury."). The supreme court has also held that disputes regarding
various other subsidiary issues bearing upon "compensability or eligibility for or the amount of
income or death benefits" fall within section 410.301. In Rodriguez, for example, the court held that
disputes concerning the finality of an impairment rating fell within the provision because their
resolution ultimately impacted the claimant's eligibility or amount of income benefits. Rodriguez,
997 S.W.2d at 253-55; (10) see also Beaumont Indep. Sch. Dist. v. Parkerson, 105 S.W.3d 761, 762-63
(Tex. App.--Beaumont 2003, no pet.) (dispute regarding date of injury impacted eligibility for
benefits, and thus was governed by section 410.301); Hernandez v. Texas Workers' Comp. Ins. Fund,
946 S.W.2d 904, 906 (Tex. App.--Eastland 1997, no writ) (dispute implicating incapacity rating and
maximum medical improvement rating "deal with the issue of the amount of benefits" and are
governed by modified de novo review; thus, suit for judicial review was properly brought in injured
worker's county or residence rather than Travis County). (11)

 However, as TPCIGA emphasizes, several of our sister courts have identified
"coverage" issues that they have distinguished from compensability issues. See Houston Gen. Ins.
Co. v. Associated Cas. Ins. Co., 977 S.W.2d 634, 636 (Tex. App.--Tyler 1998, no pet.). Houston
General involved a dispute between two compensation carriers for a single employer, Mallory
Propane. Id. at 635. Beginning on April 1, 1991, Houston General provided compensation coverage
to Mallory. Id. Mallory later obtained coverage with another carrier, Association Casualty Insurance
Company, replacing its Houston General policy effective August 1, 1991. Id. It was undisputed that
on that same day, an employee, Featherston, was injured, and that American General had coverage
at that time. Id. However, after Featherston was injured, Mallory incorrectly notified Houston
General that it was still the compensation carrier. Id. Houston General proceeded to pay benefits,
and continued to do so even after the department of insurance notified it, in 1993, that Featherston's
injury had not occurred within that company's coverage period. Id. Houston General later disputed
its liability on grounds that Association Casualty had coverage at the time of injury. Id. at 636. 
Association Casualty successfully sought summary judgment on grounds that Houston General had
waived its right to dispute liability by failing to contest compensability within 60 days. Id.; see Tex.
Lab. Code Ann. § 409.021. Of relevance here, Houston General argued on appeal that the critical
issue was not "compensability" for the injury but "coverage" of the claim, and that it had not waived
its right to contest coverage. Houston Gen., 977 S.W.2d at 636. The Tyler court agreed, reasoning
as follows:


[T]here is no dispute that at least one of the two workers' compensation policies was
in force and that Featherston's injury arose out of and in the course and scope of her
employment with Mallory. Featherston's injury was compensated. The issue here
is not one of "compensability;" rather we must decide which of the two carriers had
covered Featherston's injury. We decline to hold that the question presented here
was one of "compensability" as that term is used in § 409.021(c).



Id. 

 On the other hand, the Fourteenth Court of Appeals, applying section 409.021 to facts
closer to the present case, later held that a carrier had waived its right to dispute its liability by
waiting more than sixty days to contest compensability. Insurance Co. of State of Pa. v. Hartford
Underwriters Ins. Co., 164 S.W.3d 747 (Tex. App.--Houston [14th Dist.] 2005, no pet.). An
employee, Serpas, worked for a temporary staffing agency, Tandem Staffing, who assigned Serpas
to work at Igloo Products Corporation. Id. at 748. Serpas was injured in 1999, and Hartford,
Tandem's compensation carrier, paid benefits. Id. In 2000, Serpas sued Igloo, which ultimately
obtained summary judgment on the basis that Serpas's exclusive remedy was through the workers'
compensation system. Id. Events in this proceeding evidently prompted Hartford to file--over three
years after Serpas' injury--a notice of disputed claim with the Commission claiming "newly
discovered evidence" that Igloo was Serpas's employer under the borrowed servant doctrine. Id.;
see Tex. Lab. Code Ann. § 409.021(d). The appeals panel ruled that Hartford was liable for benefits
because it had failed to timely contest compensability. Hartford, 164 S.W.3d at 748. The district
court reversed, and the court of appeals affirmed. Id. at 748, 750. The court of appeals distinguished
Houston General on the basis that the "dispute [there] was which of the two carriers provided
insurance coverage on the day the injury to the worker occurred. Here, it is undisputed that both
[carriers] provided coverage to their respective insureds on the day of Serpas' injury; the initial
dispute was which of the insureds was the employer, not which carrier provided insurance coverage." 
Id. at 749 n.1 (emphasis added). Having found that the question of which company was the
employer of the injured worker is a question of compensability, the Fourteenth Court then found that
the insurer had waived the its right to contest a determination of which company was the employer. 
Id. at 749-50; see also 28 Tex. Admin. Code § 124.3 (2004). (12) 

 Another decision involving a liability dispute between two carriers in which the court
distinguished between compensability or coverage issues is Security Nat'l Ins. Co. v. Farmer, 89
S.W.3d 197 (Tex. App.--Fort Worth 2002, pet. denied). An employee, Farmer, had incurred a lower
back injury while on the job in 1995. Id. at 199. At the time, Security National Insurance Company
was the workers' compensation carrier for Farmer's employer. Id. An MRI revealed that Farmer
had small disc herniations at two locations in Farmer's back. Id. Security National did not dispute
that Farmer's injury was compensable and began paying benefits. Id. Farmer reached maximum
medical improvement in March 1995 and returned to work. Id. He did not seek any further medical
treatment thereafter until December 1997, when he experienced back pain that he could not relate
to a specific incident. Id. Farmer experienced a second on-the-job back injury in April 1998. Id. 
An MRI revealed a third disc herniation at a different location, that the previous two disc herniations
appeared larger than they had in 1995, and bone spurs indicative of degenerative disc disease. Id. 
By that time, Farmer's compensation carrier was Hartford Insurance Company. Id. Hartford initially
disputed compensability for Farmer's injury but ultimately conceded that Farmer had incurred a new
injury to the third disc in April 1998 and accepted liability for treating it. Id. But Hartford continued
to dispute that Farmer's other conditions--the worsening previous two disc herniations and possible
degenerative disc disease--were attributable to the April 1998 injury. Id. at 199-200. Security
National responded that Farmer's condition after April 1998 was caused solely by his April 1998
injury or degenerative disc disease, not his 1995 injury. Id. at 200. An appeals panel ruled against
Security National, finding that Farmer's 1995 injury was a producing cause of his first two disc
herniations and that his April 1998 injury did not extend to those herniations. Id. Security National
filed suit for judicial review in the district court of Tarrant County. Id. Over Security National's
objection, the district court applied the substantial-evidence standard of review rather than modified
de novo. Id. Security National appealed, complaining that the district court had erred in applying
the wrong standard of review. (13) Id. The Fort Worth Court of Appeals agreed, and reversed and
remanded. Id. at 203-04.

 Analyzing the text of section 410.301, the court held that "an appeals panel decision
'regarding compensability' is one concerning payment of a benefit allowed under the Act for an
injury that arises out of and in the course and scope of employment" and that "a decision 'regarding
eligibility for benefits' is one concerning entitlement for benefits." Id. at 201. It then held that the
two issues presented by Security National--whether Farmer's compensable January 1995 injury was
a producing cause of his post-April 1998 herniations of the previously injured discs, and whether
Farmer's compensable April 1998 injury extended to include herniations of those previously injured
discs--fell within these definitions. Id. at 202. The court rejected Hartford's argument that
compensability for those injuries was not at issue and that the sole issue was whether an insurer
should pay for an injury that all parties agreed was compensable:


These issues concern both whether Farmer was entitled to benefits under the Act and
the payment of benefits allowed under the Act for an injury that occurred in the
course and scope of his employment. If the L4-5 and L5-S1 disc herniations after
April 2, 1998 were caused by either the January 1995 or the April 1998 on-the-job
injury, or both, Farmer would be entitled to workers' compensation benefits, and one
or both carriers would be responsible for paying them. If the herniations were not
caused by an on-the-job injury, but by degenerative disc disease, Farmer would not
be entitled to benefits.



Id. at 201-02. 

 As these decisions reveal, Texas courts have struggled with what is at best an elusive
distinction between issues of compensability versus "coverage." Applying the rationale of these
cases, (14) we hold that NAIC's claim regards compensability and, thus, is governed by modified de
novo review.

 From the decisions we have reviewed, we can ascertain the following principles. A
workers' compensation dispute is one "relating to compensability, eligibility, or amount of income
or death benefits" if it presents those precise issues or certain issues that bear upon those ultimate
determinations. See Rodriguez, 997 S.W.2d at 253-55; Parkerson, 105 S.W.3d at 762-63;
Hernandez, 946 S.W.2d at 906. Disputes concerning whether an employee was injured while within
the course and scope of an employment relationship regard compensability. See Garcia, 893 S.W.2d
at 515; 28; ESIS, 908 S.W.2d at 557-58. We believe, as the Fourteenth Court suggested, that this
principle would logically extend to disputes in which it is uncontested that two carriers provided
coverage to their respective insureds on the date of injury, and the dispute centers on "which of the
insureds was the employer, not which carrier provided insurance coverage." Hartford, 164 S.W.3d
at 749 n.1. But our sister courts have determined that a dispute may fall outside "compensability,
eligibility or amount or income or death benefits" where it is undisputed that the injured worker was
acting within the scope of employment for a particular employer and the parties differ as to whether
that employer has coverage or the identity of the carrier with whom the employer has coverage. 
Houston Gen., 977 S.W.2d at 635-37; see also Security Nat'l, 89 S.W.3d at 201-02 (distinguishing
between issues of "whether Farmer was entitled to benefits under the Act and the payment of
benefits allowed under the Act for an injury that occurred in the course and scope of his
employment."). The Morales court appeared to extend this concept by holding that the dispute is
a coverage dispute, and not one of "compensability, eligibility or amount or income or death
benefits," when it encompasses scope and identity of employer issues and when at least one of the
potential employers is a nonsubscriber. Morales, 169 S.W.3d at 488.

 As demonstrated by the appeals panel decision here, (15) the dispute at the heart of
NAIC's suit for judicial review concerned whether Gregory or Hunter was the employer of Beck and
Brown. Specifically, the appeals panel considered the terms of the contract between Hunter and
Gregory and the circumstances of the job performed by Beck and Brown. Relying on the borrowed-servant doctrine, see Sparger v. Worley Hosp., Inc., 547 S.W.2d 582, 583 (Tex. 1977), the appeals
panel reviewed the evidence considered by the hearing officer and affirmed the conclusion that Beck
and Brown were employed by Gregory. This type of dispute is closely akin to the questions of
employer identity and scope of employment that Texas courts have classified as compensability
issues. 

 There is no threshold coverage question here--there is no contention, for example,
that the two workers were independent contractors or were acting in the course and scope of
employment with a nonsubscriber. Instead, each carrier's liability turns solely on a component of
the compensability inquiry--were Beck and Brown injured in the course and scope of employment
with that carrier's indisputably covered insured, or within the course and scope of employment with
the other carrier's insured? If the workers were in the course and scope of employment with
TPCIGA's insured (as the jury found), then their injuries are compensable by TPCIGA; if the jury
had instead found that the workers were in the course and scope of employment with NAIC's
insured, their injuries would be compensable by that carrier. We will follow the lead of the supreme
court in Garcia and hold that because this dispute turns on whether injured workers were acting
within the scope of employment of a covered employer, it is one "regarding the compensability or
eligibility for or the amount of . . . benefits." 

 Our holding is further supported by the significance of the legislature's provision for
APA substantial-evidence review, in Travis County district court, for appealable decisions not
"regarding compensability of eligibility for or amount of income or death benefits." See Tex. Lab.
Code Ann. § 410.255. The legislature has customarily reserved this type of deferential but
specialized review for administrative decisions within an agency's delegated area of expertise. 
Railroad Comm'n of Tex. v. Torch Operating Co., 912 S.W.2d 790, 792 (Tex. 1995); Reliant
Energy, Inc. v. Public Util. Comm'n of Tex., 153 S.W.3d 174, 184 (Tex. App.--Austin 2004, no
pet.); see also Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd., 156 S.W.3d 91, 98-99 (Tex.
App.--Austin 2004, pet. denied). Questions regarding the existence, course and scope of
employment relationships, by contrast, have long been addressed by Texas courts and lay juries. See 
GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 618 (Tex. 1999); Garcia, 893 S.W.2d at 515; see
also Arbelaez v. Just Brakes Corp., 149 S.W.3d 717, 720 (Tex. App.--Austin 2004, no pet.). We
presume that the legislature was aware of this background law when enacting the Act and would
have considered it when distinguishing between issues "regarding compensability or eligibility for
or the amount of income or death benefits" and those subject to APA substantial-evidence review. 
See Tex. Gov't Code Ann. § 311.023 (West 2005); Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 530-31 (Tex. 2002); Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is
presumed to have been enacted by the legislature with complete knowledge of the existing law and
with reference to it."). 

 We further observe that in Garcia, the supreme court cautioned that section 410.255
"may encompass issues for which the right to jury trial must be preserved." 893 S.W.2d at 530. We
must be mindful of these potential constitutional implications when construing sections 410.301 and
410.255. See Marcus Cable Assocs. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002); In re Bay Area
Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 380 (Tex. 1998); Nootsie, Ltd. v. Williamson
County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996); see also Tex. Gov't Code Ann.
§ 311.021(1) (West 2005) (courts should construe statutes when possible to avoid constitutional
infirmities). 

 We conclude that NAIC's suit is one "regarding compensability" governed by
modified de novo review under section 410.301. (16) For these reasons, we need not reach whether the
adjudication of NAIC's appeal under the modified de novo review process, if erroneous, would have
deprived the district court of subject-matter jurisdiction. (17) We overrule TPCIGA's first issue. Beck's participation at trial

 In its second issue, TPCIGA argues that Beck lacked standing to participate in
proceedings in the district court because he failed to exhaust his administrative remedies and because
he had no justiciable interest in the outcome of the trial. See Tex. Lab. Code Ann. § 410.251; Texas
Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d at 445-46.

 Our review of the record indicates the following: NAIC originally filed suit with
Beck as a named defendant because Beck had asserted before the Commission that Gregory had been
his employer. At the beginning of trial, Beck announced he would participate as a plaintiff alongside
NAIC; Beck conducted a portion of voir dire; and during opening statements, Beck informed the
jury of his position that Hunter Trucking was his employer. Furthermore, Beck questioned witnesses
and made closing argument. After trial, but before the court entered its judgment, Beck filed a
motion to formally realign the parties, requesting that he be designated a plaintiff in the case. 
TPCIGA did not object to the manner in which Beck participated at trial until it opposed Beck's
post-trial motion to realign.

 The district court indisputably had jurisdiction over the dispute, and Beck was
properly a party. The Act required NAIC to join Beck as a defendant. See Tex. Lab. Code Ann.
§ 410.253(a)(2) (West Supp. 2005). TPCIGA's complaint, in substance, is not that Beck lacked
standing or was not a proper party but that the district court erred in the manner in which it allowed
Beck to participate at trial. We hold that TPCIGA waived this complaint by failing to timely object
to Beck's participation at trial as a plaintiff and that, against this backdrop, the district court did not
abuse its discretion in granting Beck's post-verdict motion to realign. We overrule TPCIGA's
second issue.


Sufficiency of the evidence supporting employer finding

 In its third issue, TPCIGA challenges the legal and factual sufficiency of the evidence
supporting the jury's finding that Hunter was the employer of Beck and Brown at the time of injury.
TPCIGA relies on the borrowed-servant doctrine and the terms of the lease agreement, contending
that the evidence establishes that Gregory had the right to control Beck and Brown when they were
injured.


 Standards of review

 We will sustain a legal sufficiency point if the record reveals: (a) the complete
absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact.
City of Keller v. Wilson, 168 S.W.3d 802, 810 (citing Robert W. Calvert, "No Evidence" &
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). The ultimate test for
legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review. See id. at 827.

 When the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal
effect, is no evidence. See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (citing
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). But more than a scintilla of evidence
exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions. Ford Motor Co. v. Ridgeway, 135 S.W.3d 598, 601 (Tex. 2004) (citing Merrell
Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). We review the evidence in the
light favorable to the verdict, crediting favorable evidence if reasonable jurors could and
disregarding contrary evidence unless reasonable jurors could not. See City of Keller, 168 S.W.3d
at 807. Jurors are the sole judges of the credibility of the witnesses and the weight to give their
testimony. Id. at 819. When there is conflicting evidence, it is the province of the jury to resolve
such conflicts. Id. at 820. If conflicting inferences can be drawn from the evidence, we assume
jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other
inferences. Id. at 821. But if the evidence allows only one inference, we may not disregard it. See
id. So long as the evidence falls within a zone of reasonable disagreement, we may not substitute
our judgment for that of the trier-of-fact. See id. at 822.

 When reviewing a challenge to the factual sufficiency of the evidence, we must
consider, weigh, and examine all of the evidence in the record. Plas-Tex, Inc. v. U.S. Steel Corp.,
772 S.W.2d 442, 445 (Tex. 1989). If a party is attacking the factual sufficiency of an adverse finding
on an issue to which the other party had the burden of proof, the attacking party must demonstrate
that there is insufficient evidence to support the adverse finding. Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). We should set aside
the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and
manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We may not reverse merely
because we conclude that the evidence preponderates toward a different answer. See Herbert v.
Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

 Under the Act, an "employee" is a "person in the service of another under a contract
of hire, whether express or implied, or oral or written." Tex. Lab. Code Ann. § 401.012(a) (West
Supp. 2005). The meaning of the word "employee" is the same as in the context of a common-law
liability claim. Gulf States Underwriters of La., Inc. v. Wilson, 753 S.W.2d 422, 426 (Tex.
App.--Beaumont 1988, writ denied); Northwestern Nat'l Life Ins. Co. v. Black, 383 S.W.2d 806,
810 (Tex. Civ. App.--Texarkana 1964, writ ref'd n.r.e.). Texas courts have long recognized that
a general employee of one employer may become the borrowed servant of another. Sparger, 547
S.W.2d at 583; J.A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327, 330 (Tex. 1968). This doctrine
protects the employer who had the right of control from common-law liability when the employer
has workers' compensation insurance. Associated Indem. Co. v. Hartford Accident & Indem. Co.,
524 S.W.2d 373, 376 (Tex. Civ. App.--Dallas 1975, no writ).

 Whether a general employee of one employer may, in a particular situation, become
the borrowed servant of another employer is often a difficult question. Producers Chem. Co. v.
McKay, 366 S.W.2d 220, 225 (Tex. 1963). The central inquiry becomes which employer had the
right to control the details and manner in which the employee performed the necessary services. 
Carr v. Carroll Co., 646 S.W.2d 561, 563 (Tex. App.--Dallas 1982, writ ref'd n.r.e.). As the
supreme court has explained:


If the general employees of one employer are placed under control of another
employer in the manner of performing their services, they become his special or
borrowed employees. If the employees remain under control of their general
employers in the manner of performing their services, they remain employees of the
general employer and he is liable for the consequences of their negligence.



Producers Chem. Co., 366 S.W.2d at 225. "When a contract, written or oral, between two
employers expressly provides that one or the other shall have right of control, solution of the
question is relatively simple." Id. at 226. However, when the right-to-control agreement between
the employers is only implied or the contract contains no provision for right of control, the problem
becomes more difficult. Id. In such cases right of control is inferred from such facts and
circumstances as the nature of the general project, the nature of the work to be performed by the
machinery and employees furnished, length of the special employment, the type of machinery
furnished, acts representing an exercise of actual control, and the right to substitute another operator
of the machine. Id. Where the right of control prescribed or retained over an employee is a
controverted issue, it is a proper function for the fact-finder to consider what the contract
contemplated or whether it was even enforced. Humble Oil & Refining Co. v. Martin, 222 S.W.2d
995, 997-98 (Tex. 1949); Halliburton v. Texas Indemnity Ins. Co., 213 S.W.2d 677, 679 (Tex.
1948). (18)

 We therefore begin with the language of the contract between Hunter and Gregory,
which we reviewed extensively above. We look to the agreement to ascertain and give effect to the
parties' intentions as expressed in the document. Lopez v. Munoz, Hockema, & Reed, L.L.P, 22
S.W.3d 857, 861 (Tex. 2000). We examine and consider the entire writing in an effort to harmonize
and give effect to all the provisions of the contract so that none will be rendered meaningless. Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). "Courts must be particularly wary of isolating from its
surroundings or considering apart from other provisions a single phrase, sentence, or section of a
contract." State Farm Life Ins. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995). If a contract is so
worded that it can be given a certain or definite legal meaning or interpretation, then it is not
ambiguous, and it can be construed as a matter of law. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d
711, 728 (Tex. 2001). 

 TPCIGA relies on language in the contract providing that Gregory leased "possession,
control, and use" of Hunter's equipment" and was responsible for its operation to support the
interpretation that Gregory was the employer. Considered as a whole, however, the contract
demonstrates the opposite view. Under the terms of the contract, Hunter provided all fuel, meals,
and lodging for the drivers and was responsible for maintenance to the equipment. In addition, the
parties explicitly defined the nature of their relationship as that of an independent contractor, with
the clear provision that Hunter provide workers' compensation insurance and that "any drivers or
employees of [Hunter] are the complete responsibility of [Hunter]." The contract further provided
that Hunter, and not Gregory, would conduct much of the operation of the trucks under the terms of
the contract--Hunter would inspect the condition of freight both at loading and unloading; at the
beginning of the lease term, Gregory would provide Hunter with straps and traps to protect the
freight, but liability for loss, theft, or other damage would remain with Hunter; and Hunter was
responsible for documenting delivery and accounting for deductions and damage.

 The evidence is also sufficient to enable the jury to find that the parties conducted
their relationship consistent with the contract. There is evidence that Beck had been hired by Hunter,
that Hunter set his wages, issued his paycheck, and withheld taxes and social security. Hunter also
purchased workers' compensation insurance for Beck. Hunter owned the tractor that Beck drove and
instructed him on work procedures. Gregory required Beck to keep a log book according to
Department of Transportation regulations, assigned freight deliveries, and to fill out a driver
information form. (19) We find the evidence in the record consistent with the terms of the contract and
therefore legally and factually sufficient to support the jury's verdict that Hunter was the employer
in this case. We overrule TPCIGA's third issue.


Evidentiary issues

 In its fourth issue, TPCIGA argues that the district court abused its discretion in
refusing to admit into evidence the appeals panel's decision in this case, both in its complete and
redacted forms. In its fifth issue, TPCIGA argues that the district court abused its discretion in
excluding from the record a letter from Linda Gregory, the trucking dispatcher for Gregory, to
Beck alleging violations of log book protocol. 

 A district court abuses its discretion when it rules on the admissibility of evidence in
an arbitrary or unreasonable manner or without reference to guiding legal principles or rules. 
Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002); Taylor v. Tex. Dep't
of Protective & Regulatory Servs., 160 S.W.3d 641, 649-50 (Tex. App.--Austin 2005, pet. denied).
We must uphold a district court's evidentiary ruling if there is any legitimate basis in the record to
support it. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).

 We have already decided that this case was governed by modified de novo review. 
Under modified de novo review, all issues regarding compensability of the injury (such as whether
it occurred in the course and scope of employment) may be tried by jury. Garcia, 893 S.W.2d at
528; see Tex. Lab. Code Ann. §§ 410.301, .304. The party appealing the Commission's ruling bears
the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303 (West
1996).

 Concerning TPCIGA's fourth issue, the Workers' Compensation Act contains two
provisions governing the admissibility of the Commission's decision and record in a jury trial. First,
the trial court is required to "inform" the jury of the Commission appeals panel "decision" in the
court's charge. Id. § 410.304. (20) This provision is mandatory. The jury, however, is not required to
accord the decision any special weight. Garcia, 893 S.W.2d at 528. In addition, section 410.306(b)
allows the admission into evidence of the Commission's "record." Tex. Lab. Code Ann.
§ 410.306(b) (West 2006). The Commission's record is comprised, in part, of the written opinion
containing the commission appeals panel decision. ESIS, Inc., 908 S.W.2d at 560. However, the
Texas Rules of Evidence govern the admission at trial of facts and evidence contained in the
Commission record. National Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 529 (Tex. 2000). 

 At trial, NAIC objected to the admission of the appeals panel's decision on two
grounds. First, NAIC argued that the decision contained inadmissable hearsay because the panel
reviewed in its decision the evidence presented to it, including testimony concerning the employer-employee relationship. See Tex. R. Evid. 802, 803(8). Second, it asserted that the decision would
unnecessarily confuse the jury and that the resulting prejudice would substantially outweigh its
probative value. See Tex. R. Evid. 403.

 The appeals panel decision in this case is a four-page document in which the panel
reviewed testimony about the employment conditions of Beck and Brown and the lease agreement
concerning the truck. The panel extensively analyzed the governing legal principles and affirmed
the hearing officer's conclusion that Gregory was Beck's and Brown's employer. Given that the jury
was ultimately asked to determine only one issue--if Hunter Trucking was the employer of Beck and
Brown and the time of their injuries--we conclude that the district court could have reasonably
excluded the appeals panel's decision because it could have confused the jury and the resulting
confusion would have substantially outweighed its probative value. See Tex. R. Evid. 403.
Therefore, we find no reversible error in the district court's decision to exclude the appeals panel's
decision. The district court could inform the jury of the appeals panel's conclusion, and thereby
comply with labor code section 410.304, without admitting the document into evidence.

 In the alternative, TPCIGA offered a "redacted" version of the appeals panel's
decision, consisting only of pages one and four of the appeals panel's decision. On those pages,
TPCIGA used a black marker to black out all text except for the appeals panel's statement of the
issue (two lines and, separately, three lines out of twelve on page one) and its legal conclusion (three
lines out of twenty-four on page four).

 The district court noted two problems with the redacted version of the panel decision. 
First, it observed that a reader could see the redacted text through the marker lines. Second, it
believed that the redactions and deleted pages created "a misleading impression that there must be
a lot of good stuff here that we ought to be reading that's being kept out." The district court
concluded that the information contained in the redacted document would be cumulative of the
information the court was including in the jury instructions on that issue. We cannot conclude that
the district court abused its discretion in excluding the redacted document.

 Because we have rejected TPCIGA's arguments that the district court abused its
discretion in excluding the complete or redacted versions of the appeals panel's decision, we
overrule TPCIGA's fourth issue.

 We now turn to TPCIGA's fifth issue, concerning the letter from Linda Gregory to
Beck alleging violations of log book protocol. In particular, TPCIGA argues that the letter was
admissible as a business record. See Tex. R. Evid. 803(6).

 To preserve error in the exclusion of evidence, a party must (1) attempt during the
evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the
purpose for which the evidence is offered and give the trial court reasons why the evidence is
admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible,
make a record of the precise evidence the party desires admitted. Ulogo v. Villanueva, 177 S.W.3d
496, 501-02 (Tex. App.--Houston [1st Dist.] 2005, no pet .); see Tex. R. App. P. 33.1(a). The
record reveals that the TPCIGA conceded that the letter was hearsay but argued to the district court
that it was admissible as a previous testimony of Linda Gregory (even though Linda Gregory was
available and actually testified at trial). See Tex. R. Evid. 804(b)(1). The district court rejected that
assertion. TPCIGA did not argue that the letter was admissible as a business record and cannot raise
that argument for the first time on appeal. We overrule TPCIGA's fifth issue.


CONCLUSION


 We have overruled TPCIGA's issues on appeal. We affirm the judgment of the
district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: March 31, 2006

1. Brown, by contrast, never answered and did not participate at trial. 
2. Under this view, the fact that NAIC's suit was later transferred to Travis County would not
have cured any jurisdictional defect existing when the suit was first filed in McLennan County. 
3. Intertwined with these arguments, TPCIGA asserts that because NAIC's petition sought
only modified de novo review, NAIC failed to properly invoke the district court's subject-matter
jurisdiction.


 TPCIGA also contends that NAIC filed its petition for judicial review more than thirty days
after the appeals panel decision was filed, and that this rendered the petition untimely. Compare
Tex. Lab. Code Ann. § 410.252(a) (West Supp. 2005) ("A party may seek judicial review by filing
suit not later than the 40th day after the date on which the decision of the appeals panel was filed
with the division."), with id. § 410.255 (West 1996) ("judicial review shall be conducted in the
manner provided for judicial review of a contested case under [the APA]"), and Tex. Gov't Code
Ann. § 2001.176(a) ("A person initiates judicial review in a contested case by filing a petition not
later than the 30th day after the date on which the decision that is the subject of complaint is final
and appealable."). Besides maintaining that its suit was properly governed by modified de novo
review, NAIC responds that, even if not, section 410.252(a)'s forty-day deadline would still govern
and that, in any event, it satisfied even the thirty-day deadline.


 All of these contentions are resolved by our disposition of the issues above.
4. Morales was decided after the district court's judgment in this case, which may explain
TPCIGA's timing in raising its jurisdictional arguments. 
5. See generally Tex. Lab. Code Ann. §§ 408.101 (West 1996) (temporary income benefits),
.121 (impairment income benefits), .142 (West Supp. 2005) (supplemental income benefits), .161
(West Supp. 2005) (lifetime income benefits). 
6. See id. § 408.021 (West 1996).
7. See id. § 408.181 (West Supp. 2005).
8. See id. § 408.186.
9. A "compensable injury," again, is an injury (1) "for which compensation is payable" under
the Act and that (2) arises "out of and in the course and scope of employment." Id. §§ 401.011(10). 
Both elements require that the employer have workers' compensation coverage. See id.
§ 401.011(18) ("employer" under the Act is "a person who makes a contract for hire, employs one
or more employees, and has workers' compensation insurance coverage"). 
10. The supreme court reasoned:


Any dispute that challenges an impairment rating's finality necessarily
implicates the date of maximum medical improvement and the amount paid as
temporary income benefits. This dispute may also impact the employee's
eligibility for, and the calculation of, impairment income benefits and
supplemental income benefits. Disputes about an injured employee's
impairment rating are, therefore, disputes about benefits. Because the modified
de novo standard of review applies to these types of benefit disputes, that
standard also applies to impairment rating disputes, including disputes that
challenge an impairment rating's finality. 


Id. at 254. 
11. Conversely, broader disputes turning on a component compensability question have been
held to fall within section 410.301. See American Casualty Co. v. Martin, 97 S.W.3d 679, 686-87
(Tex. App.--Dallas 2003, no pet.) (employer's claim against carrier for reimbursement of benefits
paid was governed by section 410.301 rather than 410.255 because "threshold standard for the right
to reimbursement is the existence of a compensable injury, and the amount of reimbursement is
equal to the amount of benefits paid to the employee to which he was entitled.").
12. Rule 124.3, implementing labor code section 409.021, explicitly requires that carriers must
contest compensability within sixty days "[i]f the carrier wants to deny compensability of or liability
for the injury." 28 Tex. Admin. Code § 124.3(a)(3) (2004) (emphasis added). Neither party suggests
that Rule 124.3 has any bearing on our analysis of labor code section 410.301, however.
13. We observe that the Fort Worth court did not characterize this issue as one of subject-matter jurisdiction, and did not indicate that either party questioned the Tarrant County district
court's subject-matter jurisdiction over a dispute the court had determined was governed by section
410.255.
14. We express no opinion regarding whether the statutory definitions and Garcia might
suggest a broader view of compensability issues.
15. Cf. Morales v. Liberty Mut. Ins. Co., 169 S.W.3d 485, 488 (Tex. App.--El Paso 2005, pet.
filed) (emphasizing that appeals panel had characterized dispute as concerning coverage, not
compensability). 
16. We intend no comment regarding whether or how any distinction between compensability
issues under section 410.301 and "coverage" issues should be applied to facts other than those here. 
17. We observe, however, that if NAIC's suit had belonged on the substantial-evidence track,
and that if following the wrong track would deprive the district court of subject-matter jurisdiction,
this case would have implicated many of the concerns with finality of judgments that underlie Dubai
and its progeny. Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000). In Dubai, the supreme
court reversed the longstanding doctrine that requirements of a statutory cause of action, created in
derogation of the common law, are jurisdictional. To justify its departure from that established
doctrine, the court reasoned:


[W]hile conceptualizing subject-matter jurisdiction in this way has an initial
appeal, the resulting practical difficulties suggest underlying logical flaws. 
Because of the longstanding principle that subject-matter jurisdiction is a power
that "exists by operation of law only, and cannot be conferred upon any court
by consent or waiver," Federal Underwriters Exch. v. Pugh, 141 Tex. 539, 174
S.W.2d 598, 600 (1943), a judgment will never be considered final if the court
lacked subject-matter jurisdiction. "The classification of a matter as one of
[subject-matter] jurisdiction . . . opens the way to making judgments vulnerable
to delayed attack for a variety of irregularities that perhaps better ought to be
sealed in a judgment." Restatement (Second) of Judgments § 12 cmt. b, at 118
(1982). When, as here, it is difficult to tell whether or not the parties have
satisfied the requisites of a particular statute, it seems perverse to treat a
judgment as perpetually void merely because the court or the parties made a
good-faith mistake in interpreting the law. 


Dubai, 12 S.W.3d at 76. This case presented a potential paradigm illustration of these concerns. 
The parties, in apparent agreement, adjudicated NAIC's suit as if it concerned compensability and
was governed by modified de novo review. The distinction in current Texas law between matters
impacting compensability governed by modified de novo review and other issues governed by
substantial-evidence review is often elusive, as demonstrated above. Yet if the parties had guessed
wrong, an unsuccessful party, like TPCIGA, could have attacked the judgment at any point on
appeal--or even collaterally.


 The legislature may well have intended such jurisdictional limitations, see Sierra Club v.
Texas Natural Res. Conservation Comm'n, 26 S.W.3d 684, 687-88 (Tex. App.--Austin 2000)
(contrasting APA's limitations on district court's subject-matter jurisdiction from types of procedural
limitations at issue in Dubai), aff'd on other grounds by, 70 S.W.3d 809 (Tex. 2002), but they create
complications of judicial administration that the legislature perhaps did not foresee. To avoid the
risk of jurisdictional defects and lack of finality, parties will, out of an abundance of caution, file
parallel proceedings in both Travis County district court and the county of the injured workers'
residence, creating both multiplicity of litigation and the risk of inconsistent adjudications. Cf.
American Cas., 97 S.W.3d at 686-87 ("If we were to read the Act to require judicial review of
compensability and eligibility decisions in one court, and judicial review of the reimbursement
decisions that are tied to those decisions in another court, employees and employers would face the
risk of inconsistent and incompatible results."). These problems could be avoided by such legislative
measures as clarifying that the court in which a judicial review suit is filed possesses subject-matter
jurisdiction to transfer the suit to the proper court or to adjudicate the suit, even under an incorrect
review method, if no party timely objects. 
18. We recognize that the supreme court has recently reconsidered the principle in the context
of workers' compensation law that an employee can only have one employer. See generally
Wingfoot Enters. v. Alvarado, 111 S.W.3d 134 (Tex. 2003). At that time, the supreme court limited
its holding to the issue of "whether there may be two employers for workers' compensation purposes
when a provider of temporary workers furnishes a worker to a client that controlled the details of the
work at the time the worker was injured and there was no agreement between the provider of
temporary workers and the client regarding workers' compensation coverage." Id. at 144. 
Therefore, we rely on the traditional right-of-control test in this case. 
19. On cross-examination, NAIC questioned Linda Gregory, a trucking dispatcher for
Gregory, concerning Beck and Brown's employment status. NAIC asked if Beck filled out a "job
application" with Gregory. Linda Gregory responded, "Yes, but that was just a form we used to have
the information, but they weren't actually hired by [Gregory]." 


 Linda Gregory also testified that Gregory had concerns about Brown's driving ability and
requested that Beck and Brown drive as a team.
20. In a bench trial, the court shall consider "the decision of the commission appeals panel"
in rendering its judgment. Tex. Lab. Code Ann. § 410.304(b) (West Supp. 2005).